IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| MICHAEL WHITING, ET AL. § | |
| § | |
| V. § | CIVIL ACTION NO. G-01-429 |
| § | |
| MICHAEL KELLY, ET AL. § | |

**REPORT AND RECOMMENDATION**

Plaintiffs Michael Whiting, Stephen Austin, Michael Morales, Larry Shafer, and Alpha Tippins, Jr. bring this complaint pursuant to 42 U.S.C. § 1983. Plaintiffs allege that Defendants have been deliberately indifferent to their serious medical needs by failing to provide adequate testing and proper treatment for the Hepatitis C Virus (HCV), and challenge the existing policy regarding treatment for inmates infected with HCV. Currently before the Court is Defendants Dr. Michael Kelley, Dr. Owen Murray, Paul Jung, and Dr. Augustine Egbunike's Motion for Summary Judgment, to which no response has been filed. Having considered all pleadings and summary judgment evidence, this Court makes the following recommendation to the District Judge.

Plaintiffs, all of whom have tested positive for the Hepatitis C virus, allege that the policy created and adopted by the Texas Department of Criminal Justice (TDCJ) to govern protocol for the treatment of HCV-positive inmates is inadequate; "delays and prevents 99%" of all inmates with HCV from receiving "any reality" of treatment; stresses monitoring rather than treating inmates; and indiscriminately labels inmates as "asymptomatic." Plaintiffs seek an injunction ordering that TDCJ and UTMB Managed Correctional Health Care update and correct their policy;

1

order immediate, full-scale testing and biopsies to be performed on all infected inmates; order the State of Texas to provide funding for medication that will "clear" the virus from inmates; and, order that all inmates infected with HCV be treated immediately.

Defendants assert, *inter alia,* that they had no role in the formulation of the existing (or another other) policy which mandates protocol for the treatment of HCV in Texas prisons. A non-Defendant, Dr. Lannette Linthicum, Director of the Health Services Division of the TDCJ, states in her affidavit[1] that an expert advisory panel on hepatitis was convened in December, 1998, by the Texas Board of Criminal Justice.  The panel included the Texas Commissioner of Health, the Chair of the National Institute of Health Consensus Conference on Hepatitis C, the Chief of the Hepatitis branch and a medical epidemiologist from the Centers for Disease Control and Prevention, a noted microbiologist faculty member from the University of Texas Medical Branch (UTMB) and a correctional health policy consultant.  Based on the panel's recommendation, a revised Hepatitis C policy, <u>TDCJ Infection Control Manual Policy, B-14.13</u> was implemented in March, 2000, and has undergone review and revision twice since, the latest being in October, 2003.  The policy outlines criteria for offenders who must be considered for treatment and those who should not be considered because of medically related contraindications for treatment.  All TDCJ inmates are screened for HCV. Because the medical profiles of infected inmates are inherently unique, each is evaluated and treated according to his individual medical

---

[1] *See* Defendants' Motion for Summary Judgment, Exhibit 5.

profile[2]. Contrary to Plaintiffs' assertion that inmates are indiscriminately labeled as asymptomatic or are simply untreated, no evidence exists to support this claim. To the contrary, TDCJ identifies over 6,000 offenders with HCV each year[3], and it is this large number of infected inmates (30% of whom are infected with HCV when entering TDCJ) that provided the impetus behind the current detection and treatment policy currently in use. In addition to guidelines concerning treatment protocol, the policy also dictates that all inmates be educated about the modes of transmission of the hepatitis C virus and be forewarned that it is the responsibility of infected offenders, like infected free-world individuals, to prevent sexual transmission of the virus.

Plaintiffs also allege that Defendants have been deliberately indifferent to their serious medical needs in the mistreatment of their disease, and seek an injunction ordering that biopsies be performed on each infected inmate and that each infected inmate be treated with medication that will "clear" the virus completely.

[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety, *Farmer v. Brennan,* 511 U.S. 825 (1994), and encompasses only the unnecessary and wanton infliction of pain repugnant to

---

[2]   *Id*. at p. 4.

[3]   *Id*. at p. 5.

the conscience of mankind. *Estelle,* 429 U.S. at 105-06. Hence, not every claim of inadequate or improper medical treatment is a violation of the Constitution; *see id.;* nor does a disagreement with a physician over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Similarly, prison doctors are not required to follow the recommendations of non-prison doctors for treating inmates. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). Merely alleging that prison doctors should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). Where there is undisputed evidence of sick calls, examinations, diagnoses and treatment, a claim of deliberate indifference can be negated, even if the treatment proves ultimately to be unsuccessful. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1989). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right. *Youngberg v. Romeo,* 457 U.S. 307, 322-23 (1982).

With respect to all Plaintiffs at bar, none have stated, with even vague specificity, the tests they feel they should have received but did not receive (other than a liver biopsy); the drugs they feel they should have received but did not receive; or, reasons supporting their beliefs. Instead, Plaintiffs make wholly conclusory statements and assumptions, many of which are blatantly wrong and contradict the findings by the expert panel noted above. Most persons infected with HCV will most likely remain infected for life; only 15% will clear the infection

4

completely.[4]  Of the 85% who remain infected, most will live out their life entirely without ever having disability or symptoms related to HCV. Only 5% die of liver failure or liver cancer related to HCV, and this risk is increased dramatically if a person consumes alcohol on a daily basis.[5]  Based on this criteria, there is absolutely no basis upon which to consider or grant injunctive relief in the form of requiring a liver biopsy for each and every infected inmate. Moreover, national statistics stated above belie any notion that a drug capable of completely clearing HCV from every inmate even exists.  Plaintiffs' beliefs are wholly unsupported by fact.  What is obvious to this Court is that Plaintiffs do not understand the basis of treatment for each and every inmate infected with HCV and, for this reason, object to TDCJ's mode of treatment on a purely general basis.  Plaintiffs have offered no proof or evidence that the current TDCJ protocol for the detection and treatment of HCV is unconstitutional or warrants court ordered revision, other than by voicing their own dissatisfaction with their own treatment and broadly stating that other inmates within TDCJ have complaints about their treatment too.  This simply will not suffice.  Defendants note in their summary judgment motion the extremely high percentage of TDCJ inmates infected with HCV.  Many inmates who enter TDCJ are already infected with the virus and do not know it until they are tested by TDCJ physicians.  One must assume that since these inmates were not aware they were infected while living in the free-world, those living an

---

[4]  *Id.* at p. 2.

[5]  *Id.* at p. 3.

unsafe/unhealthy lifestyle that included alcohol and/or drug abuse unknowingly contributed to or exacerbated their serious condition. Failing to sustain a lifestyle in a manner consistent with that necessary to prevent infection and further harm, such as cirrhosis of the liver, many infected inmates entering TDCJ-ID do so with hugely varying stages of the disease.  Many have enzyme levels that are amenable to treatment, many do not.  Many have cirrhosis of the liver and are obviously not amenable to standard treatment protocol.  In other words, many inmates receive many different forms of treatment, depending on the stage of their disease, as well as numerous other health factors.  The fact that Plaintiffs and other inmates receive different forms of treatment which they believe are inferior is simply of no moment absent specific factual allegations evidencing deliberate disregard by Defendants with an intent to harm.  Plaintiffs have completely failed to produce this type of evidence, without which their claims have absolutely no merit.

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of this Court that Defendants Motion for Summary Judgment be GRANTED and this case be DISMISSED With prejudice under 28 U.S.C. § 1915(e)(2).

The Clerk shall send a copy of this Report and Recommendation to the Plaintiff by the means in place for transmission of same.  The Plaintiff shall have until **May 26, 2005,** in which to have written objections <u>physically on file</u> in the Office of the Clerk.  <u>The objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at  P.O. Drawer 2300</u>.  Any Objections filed shall be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge", which will then be forwarded to the District Judge for

consideration.  Failure to file written objections within the prescribed time shall bar an aggrieved party from attacking on appeal the proposed factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

    **DONE** at Galveston, Texas, this the 10th day of May, 2005.

                                              *[signature]*
                                         John R. Froeschner
                                         United States Magistrate Judge